which is Larkin against Finance System of Green Bay. Good morning. Mr. Stern. Yes. Can you hear me? I'm hearing some beeps. Hello. You're here. I'll proceed. I'll proceed. Mr. Stern. Mr. Stern. The first question in any case is whether there is a justiciable controversy. And I'm interested in exactly how your client suffered concrete injury. Yes, Your Honor. Well, there's directing the analysis really following Spokio. Spokio makes no good counsel. Counsel, I asked a particular question. Please tell me exactly how your client suffered concrete injury. We can discuss Spokio later. Okay. The concrete injury was was communicating false information. Look, communicating false information is what you say the defendants did. I'm interested in your client's injury. Could you please describe concretely the injury suffered? Yes. The injury suffered is that their right was their right was invaded to receive their right to receive truthful information from a debt collector was invaded by the debt collectors. I'm going to try this once more. You say that the defendants sent false information which violated the statute. Spokio holds that a violation of a statute is not enough. I'm I'm asking and this will be the last time I will ask it for you to describe the concrete injury your client suffered. In addition to what I mentioned, I believe that the Spokio is pretty clear that the harm that's required for concrete injury is an invasion of a substantive right. Also, okay, if that's your line, you're in trouble. Mr. Stern, you've argued that the letters would cause a consumer to think that she will be without medical care if she fails to pay her bills. I've been wondering, this is Judge Rovner, by the way. Yes. I've been wondering what language in those letters references the continuity of medical care at all, let alone threatens the withdrawal of such care. The letters discuss that the need for payment in order to preserve good credit ratings and a credit record with the doctor's offices and that by failing to do that, it is to undermine what they refer to as the faith that the doctor has in the patient. And certainly with respect to a 12b6 standard, that that information would lead a consumer to wonder if I don't pay, am I going to be continued to be treated by the doctor? Or if I am going to be continued to be judgment with respect to treatment? You know, the actual language of the letters, I fear that I do not think that that supports hyperbolic, you know, characterization. The letters indicate that the interested in the debtor preserving a good credit rating with them. I mean, to me, those statements recognize the type of natural consequence of unpaid bills. And I would think that an unsophisticated consumer would interpret the letters as merely acknowledging that unpaid bills can shake a credit worthiness. I'm sorry. I mean, I think that your characterizations of the letters, I mean, nothing threatens the withdrawal of medical care. I agree that certainly it's not expressly stated the withdrawal of medical care. However, we're dealing here with not just creditors, we're dealing with medical services. And as we've alleged, that's a unique, that's different than other types of credit and other types of transactions, where doctors for a, you know, what amounts to here was, was a relatively small amounts of debts, that that usually the doctors don't even know that that a bill is outstanding, or there may be an unpaid co-pay or a deductible of some sort. You've never been married to doctors, I'm afraid. Well, I mean, certainly the way we've alleged it in the complaint is that this is not something that, you know, Green Bay Radiology does, it does not impact the, the, in any way, what they do, they don't maintain a credit rating, they don't maintain a credit record. These are false statements about what this creditor, you know, what Green Bay Radiology and the doctors there do. It's a false statement. And, and certainly false statements with regard to credit reporting and credit standing and credit rating are the types of things that the court has found as being material violations. The, so that's our position with respect to the way these statements are made. There's no reason for those statements to be in these letters, other than to try to induce the consumer to make a payment. And by as to the nature of what, in fact, their doctor does. And that's the way it's been alleged in the complaint. And those are the facts of the complaint. I had asked for reserving time, I'd like to reserve the rest of the time, if I may, for rebuttal. Certainly, Mr. Stern. Ms. Klander. Thank you, Your Honor. May it please the court, Jessica Klander for Finance System of Green Bay. To jump into the threshold question here, which is whether the court has jurisdiction or there's a justiciable injury here. There is not standing in this case because the appellants have not articulated a harm. And the issue here is, just like in Casillas, there's no harm, no foul, which is that these are after the fact complaints regarding statements, but there is no allegation of any impact on the response or the rights, excuse me, of the consumer. And so based on that alone, there is no harm that is at issue to create standing in this case for the appellants. And Casillas really is on point with that. And the analysis that was done that we put in a brief as well as to how the court looked at the issue of standing, which is what occurred that actually created a risk or an actual harm to the consumer's rights or to the actual consumer. And here there is no allegation of that. It is a vague statement that is conclusory without factual support and hasn't been backed up. Ms. Klander, good morning. This is Judge Wolfner. The plaintiffs here allege that the letters contained language that was abusive, deceptive, unfair, debt collection practice. I mean, that's not merely a procedural violation, it's true, but a substantive violation that would go to the heart of the interest protected by the FDCPA. Wouldn't such claims, if adequately alleged, if adequately alleged, support standing? Thank you, Judge. And should we, you know, be inquiring, should we inquire further into the viability of the allegations at the standing stage of inquiry, as opposed to the Rule 12b6 stage? Well, Your Honor, the issue is, you have to look at the complaint for standing and what is alleged. So the allegations are relevant if you have to assume that they're true and there can't be a rigorous analysis of those allegations. And so it is broader than a 12b6. But here there just simply are no allegations other than a legal recitation of conclusion, which is not sufficient to allege standing. There has to be an allegation of what the harm is, a factual allegation supporting the harm, not just a statement that there is harm. Maybe the harm is that they were actually denied medical treatment or something to that effect. Now, is it your position that the creditor actually maintained a credit rating for patients? Is that your position? It is, well, it's a little bit outside the scope of the record, but I would say the appellant's position on what a credit rating is, is broader than what that term actually means. And if you Google, just do a definitional search of credit rating, it's really just what, I actually did that in preparation for this, which is, it is that the, an estimate of the ability of a person to fulfill their financial commitments based on previous dealings. It's not a credit score. It's not, those aren't the words that were used. So it's not our position that there was some kind of, they're not a credit bureau. And the fact that the argument by appellants is making that kind of inferential leach is sort of bizarre and idiosyncratic under the cases. But more broadly, just that past dealings will instill a level of comfort as to whether or not they will continue to pay or not pay. So I think that it's more of a common sense approach. There's not really a legal position here. It's a common sense approach as to what the unsophisticated consumer would understand that to mean. And it's precisely what that is. So, you know, it's the standing issues here, again, is the threshold issue. The appellants have not articulated an actual or risk of harm here that would be sufficient to confer standing. But even if there was, there is an issue with the actual claims here, the substantive merit of the claims. And this is not like other letter cases in the FDCPA context. There's no allegation that any of the core requirements of a collection letter that communicate concrete information were somehow inaccurate. No allegations regarding that the services or the debt is valid. No allegation regarding the amount or fees or anything like that about the cost. No allegation about any of the consumer protection disclosures not being included. This is about innocuous statements that don't convey any concrete information that are basically aspirational. And the inferential leap that appellants are making is too much. It's too wide to be supported under the case law. To go from you don't want to lose our confidence or you want to be worthy of the creditor, to extrapolate that out to you aren't going to get medical treatment is too far of an inferential leap and is under the Pettit and Zemeckis lines of cases, which is, it is bizarre and idiosyncratic and does not as a matter of law, state a claim that is valid under the case law or the statute itself. And just as a side note, the letters don't say anything about a that the physicians don't know, which I'm not sure is an accurate assumption to make. But even if that's true, we're not talking about the physicians, it's the creditor. And so maybe it's the billing department, maybe it's whatever. But the fact is, the arguments asserted by the appellant are going far beyond the language in the letter. And as a matter of law, we have to look at the anything concrete about the debt. And even if accepted, these are all true statements. These are true statements. The point of collection letters is to collect debt. So of course, the point is to have the consumer pay. A creditor hires a collection agency or retains one in order to collect debt. So of course, they want their consumer to pay in response to the debt. There's nothing wrong with that proposition in and of itself. The FTC protects against abusive and harassing activities and conduct, not the act of collecting debt itself. So this is supposed to be based on what the statute itself is protecting. And I would I would say that this goes well beyond what the statute is is framed to protect against. I would even if there is some kind of technical misstatement under the Circuit Hahn case and its progeny, it has to be both false and material. And for the same reasons, really, from what we discussed understanding, there is no material misstatement here because there was no impact on the consumer's response to the debt. There was simply nothing that occurred and nothing that was that was alleged that occurred as a result of these innocuous statements. The debts weren't paid. They didn't call. They didn't do anything. And so that in and of itself, that failure to allege any different response makes this immaterial and therefore failed under the Hahn and progeny cases. And then finally, I would just say, we discussed some of the Puffin cases as well. You know, I would say that this is probably more aspirational than Puffin. But the Gruber case that the we believe you want to pay your just debt. And the court ultimately determined that that was not false as a matter of law. It was not really the issue there was did that overshadow the 30-day validation right because it stated that it was a valid debt by saying just. And basically, the court said that's a little too far of an inferential lead for us to make this as a Puffin statement that is not something that triggers a violation under the law. Unless the court has other questions, I will conclude my comments and turn it back to the appellant. Hearing none. Thank you, Miss Klander. Mr. Stern, you have about seven minutes left, I believe. All right. Thank you, Your Honor. Let me address first the standing issue. I want to point something procedurally as to the standing issue, which is that this issue was raised in the district court was litigated in the district court and district court found in favor that there that there was standing. If this court were to decide that there is a an issue as to standing, then the I think the appropriate remedy is not to affirm but rather to reverse and allow us leave to amend in the district court. Which would be something if the district court had the district would have addressed that if the district court found that there were standing problems. So that's more of initially a procedural issue. And what would you say about your client's interest or your client's injury, I should say, if you were permitted to amend? Well, we we've alluded to we've identified that both of our clients ended up in bankruptcy. The that's one of the the the interest that the as a consequence of the allegedly misleading statement. In part, the the debts in general. In terms of okay, but I come back to and maybe maybe we're mistaken as to what the law is. But as we understand Spokio is that Spokio has said that either an invasion of a substantive right and the court referred to in the majority opinion to slander per se, where there's no we can't identify a whole an actual sort of actual damages or common law nature of damages that flow from it, but a slander per se. Justice Thomas's concurrence refer to a trespass where someone could invade the space that someone owns in terms of property, but there's no actual damage that those are invasions of substantive rights and we contend that an invasion of substantive rights without the need to allege any other harm is sufficient. When it comes to a procedural violation, then there must be an identification of how the the the procedural violation placed a material risk of harm to Harm that Congress identified that we contend that these are not procedural violations. These are substantive violations. The right to receive information and the corresponding duty of of a debt collector provide accurate information that we we can and I want to go back to. There's a link that involves the the When we start with is that these letters specifically said that there was a credit rating maintained by the the doctor's office. The letters did not say that. That it did say it's like, for example, the letter said They that the editors maintaining a credit rating. Well, it says that we're seeing you preserving a good credit rating with the with the doctor's office to maintain a good credit rating and to get necessarily implies that the the doctor's office maintains a credit rating. And the same thing with saying is to make you know to make a payment in order to clear your credit record implies that the doctors maintaining some kind of credit records. And, and our assertion is that that doesn't exist. The doctor is not looking at credit ratings not maintaining a credit record. There may be, you know, an account record or, you know, a billing record of what's what may be owed on an account and what gets paid by insurance and what gets paid directly by the patient. But, but those facts, you know, we've alleged that those that there is no such thing as as the A credit rating or credit records that are maintained by the creditor, who is a doctor's office. We're not talking about a Bank of America or a Chase Bank. We're talking about Radiology practice and from those facts. We're saying is when you couple that with saying that you don't want your doctor lose faith. Well, the loss of faith will only matter to the consumer. If there's an ongoing relationship. If they're never going to see the doctor again or that practice again. There's no reason to be worried about what the faith is. So being worried about what faith, they're going to lose Does go to the doctor patient relationship, whether it's specific to The The, you know, providing any kind of specific Treatment or or care. We're not saying it goes that specifically, but certainly this Under the 12 be six standard under locks. This is not does not fall into the first category where you can say that this is clearly Not in any way false or or deceptive and the so that's how we look at this. And that's how also we look at the standing issue. And and as a result, you know, when we've cited council decided to the, you know, petty case. Mr. Stern, you have one minute for me. Thank you. Whether the court specifically said talked about was talking about 16 1692 he 16 but the court said is that the the section is designed to prevent debt collectors from coercing payments from debtors by falsely leading them to believe that the failure to pay the debt will adversely affect the debtors credit rating and ability to obtain credit. That's a quote from The denial of over the the effect on credit records or credit rating is absolutely material. Is a material violation when it's a false statement. And Mr. Questions. I'm nothing else. Thank you, Mr. Stern. The case is taken under advisement and the court will be in recess.